## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## BID PROTEST

| | |
|---|---|
| ADVANCED SIMULATION TECHNOLOGY INC., Plaintiff, v. UNITED STATES OF AMERICA, Defendant. | Case No. 23-2201C<br><br>Judge Silfen |

### PLAINTIFF ADVANCED SIMULATION TECHNOLOGY INC.'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Hamish P.M. Hume (Attorney of Record)
Samuel C. Kaplan
Gina A. Rossman
BOIES SCHILLER FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
(202) 237-2727 (t)
(202) 237-6131 (f)
hhume@bsfllp.com
skaplan@bsfllp.com
grossman@bsfllp.com

*Counsel for Plaintiff Advanced Simulation Technology inc.*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND ............................................................................. 5

      A.    ASTi Is A Private Company That Specializes In Providing Fully
Developed Commercial Products To Meet The Needs Of Military
Simulated Training Systems. ...................................................... 5

      B.    The Naval Air Warfare Center's TSD Is Engaged In An Effort To Develop
A New Digital Radio Management System For Use In Military Simulated
Training Systems—"DRMS-NG". ............................................... 6

      C.    Without Performing The Market Research Required By 10 U.S.C. 3453,
And Without Any Public Solicitation Or Public Announcement Of The
Award, TSD Awarded A $12 Million Contract To Bowhead To Assist In
The Development Of DRMS-NG. ................................................. 7

      D.    ASTi Has Commercial Products That Meet The Needs Of DRMS-NG And
Of The Bowhead Contract. ....................................................... 10

      E.    After This Suit Was Filed, TSD Admitted Its Legal Error, But Sought To
Continue Its Improper DRMS-NG Developmental Efforts, Including
Through Continuing To Perform A $4 Million Portion Of The Bowhead
Contract. ................................................................................ 10

      F.    ASTi Will Suffer Irreparable Harm If That Contract Is Not Enjoined. .... 11

LEGAL ARGUMENT ...................................................................................... 12

    I.    THIS COURT HAS JURISDICTION TO GRANT ASTI THE RELIEF IT
REQUESTS. ............................................................................. 12

      A.    ASTi Has Standing to Pursue This Protest Because Its Voisus Product
Line Can Meet the DRMS-NG Requirements, And the Government's
Admitted Procurement Error Deprived ASTi of the Opportunity to
Compete. ................................................................................ 12

      B.    This Action Challenges The Award of a Contract, Not the Award of a
Delivery Order. ....................................................................... 15

    II.    ASTI IS ENTITLED TO A PRELIMINARY INJUNCTION. ..................... 17

      A.    ASTi Is Likely To Succeed On The Merits. .................................. 17

      B.    ASTi Will Suffer Irreparable Harm if the Procurement Is Not Enjoined. 19

C.      The Balance of Hardships Weighs In ASTi's Favor. ............................... 20

D.      Awarding A Preliminary Injunction Would Be In The Public Interest. ... 21

CONCLUSION ............................................................................................................. 22

# TABLE OF AUTHORITIES

## Cases

*CACI, Inc.-Fed. v. United States*,
   67 F.4th 1145 (Fed. Cir. 2023) ........................................................... 13

*CCL, Inc. v. United States*,
   39 Fed. Cl. 780 (1997) ........................................................................ 15

*CliniComp Int'l, Inc. v. United States*
   904 F.3d 1353 (Fed. Cir. 2018)........................................................... 12

*Distributed Sols., Inc. v. United States*,
   539 F.3d 1340 (Fed. Cir. 2008)........................................................... 15

*Electra-Med Corp. v. United States*,
   140 Fed. Cl. 94 (2018) .................................................................. 13, 14

*Elmendorf Support Servs. Joint Venture v. United States*,
   105 Fed. Cl. 203 (2012) ...................................................................... 15

*ES-KO, Inc. v. United States*,
   44 Fed. Cl. 429 (1999) ........................................................................ 17

*FMC Corp. v. United States*,
   3 F.3d 424 (Fed. Cir. 1993)................................................................. 17

*GEO Grp., Inc. v. United States*,
   100 Fed. Cl. 223 (2011) ...................................................................... 20

*Harmonia Holdings Grp., LLC v. United States*,
   166 Fed. Cl. 727 (2023) ...................................................................... 20

*Int'l Res. Recovery, Inc. v. United States*,
   60 Fed. Cl. 1 (2004) ............................................................................ 19

*Magellan Corp. v. United States*,
   27 Fed. Cl. 446 (1993) ........................................................................ 19

*McAfee, Inc. v. United States*,
   111 Fed. Cl. 696 (2013) ................................................................ 15, 16

*MORI Assocs., Inc. v. United States*,
   102 Fed. Cl. 503 (2011) ...................................................................... 16

ii

*OAO Corp. v. United States,*
  49 Fed. Cl. 478 (2001) ......................................................................... 17

*Palantir USG, Inc. v. United States,*
  129 Fed. Cl. 218 (2016), aff'd, 904 F.3d 980 (Fed. Cir. 2018) ............................ 21

*PGBA, LLC v. United States,*
  57 Fed. Cl. 655 (2003) .............................................................. 17, 20, 22

*Reilly's Wholesale Produce v. United States,*
  73 Fed. Cl. 705 (2016) ......................................................................... 20

*REV, LLC v. United States, Aptive Res., LLC,*
  2024 WL 315925 (Fed. Cir. Jan. 29, 2024) .......................................... 13

*Reynolds v. Army and Air Force Exch. Serv.,*
  846 F.2d 746 (Fed. Cir. 1988) ............................................................ 12

*Savantage Fin. Servs., Inc. v. United States,*
  81 Fed. Cl. 300 (2008) ......................................................................... 17

*SEKRI, Inc. v. United States,*
  34 F.4th 1063 (Fed. Cir. 2022) ........................................................... 15

*Software Testing Sols., Inc. v. United States,*
  58 Fed. Cl. 533 (2003) ......................................................................... 21

*Starr Int'l Co. v. United States,*
  856 F.3d 953 (Fed. Cir. 2017) ............................................................. 12

*Sys. Stud. & Simulation, Inc. v. United States,*
  146 Fed. Cl. 186 (2019) ................................................................. 20, 22

*Tele-Consultants, Inc. v. United States,*
  142 Fed. Cl. 686 (2019) ....................................................................... 15

*United Payors and United Providers Health Servs., Inc. v. United States,*
  55 Fed. Cl. 323 (2003) ......................................................................... 19

*W & D Ships Deck Works, Inc. v. United States,*
  39 Fed. Cl. 638 (1997) ......................................................................... 17

*Weeks Marine, Inc. v. United States,*
  575 F.3d 1352 (Fed. Cir. 2009) ..................................................... 14, 15

## **Statutes**

10 U.S.C. § 3401 ........................................................................................ 16

10 U.S.C. § 3406(b) ................................................................................................ 16

10 U.S.C. § 3406(c) ................................................................................................ 16

10 U.S.C. § 3406(f) ................................................................................................. 15

10 U.S.C. § 3453 ....................................................................................... 1, 9, 18, 22

28 U.S.C. § 1491(b)(1) ........................................................................................... 12

28 U.S.C. § 1491(b)(2) ............................................................................................. 1

28 U.S.C. § 1491(b)(4) ........................................................................................... 17

5 U.S.C. § 706(2)(A) .............................................................................................. 17

Plaintiff, Advanced Simulation Technology inc. ("ASTi"), timely files this motion (and memorandum in support thereof) for a temporary restraining order and/or preliminary injunction, pursuant to 28 U.S.C. § 1491(b)(2) and Rule 65 of the Rules of the United States Court of Federal Claims.

## INTRODUCTION

In 1994, Congress enacted a law that requires all government agencies to meet their procurement needs by acquiring "commercial products" or "nondevelopmental items" "to the maximum extent practicable."  10 U.S.C. § 3453.  This law also provides that before issuing solicitations or awarding contracts, all government agencies are required to conduct market research to determine the availability of "commercial products" or "nondevelopmental items" that could meet their procurement needs.  *Id.* at § 3453(c).

The reason for this law can be aptly summarized through a quote from the Secretary of Defense at the time, William Perry:

> Commercial technology advancements are outpacing DoD sponsored efforts in the same sectors that are key underlying technologies for military superiority (e.g., computers, software, integrated circuits, communications, and advanced materials). The current development and production of DoD systems takes too long. The design cycle for commercial technologies is approximately 3–4 years, in DoD it is 8–10 years. Many DoD systems are technologically obsolete at the time they are fielded.

Secretary William Perry's Testimony to Congress, S. Rep. 103-259, 1994 WL184554, *5.

The House and Senate Reports underlying the 1994 legislation similarly make clear that the concern driving enactment of the law was the waste and inefficiencies stemming from a history of long-term developmental contracts that were in the interest of traditional defense contractors who were paid on a "cost plus" basis for their years of developmental engineering work, but that did not sufficiently take advantage of existing commercial technology.  Such developmental contracts led to cost overruns, wasted resources, unnecessary delay, and use of inferior and

1

outdated technology, particularly in the defense industry. S. Rep. 103-259, 1994 WL 184554, at *6 (May 12, 1994); S. Rep. 103-258, 1994 WL 188485, at *6 (May 11, 1994) (the "purchase of proven products such as commercial and nondevelopmental items can eliminate the need for research and development, minimize acquisition lead time, and reduce the need for detailed design specifications or expensive product testing."); H. Rep. 103-545(I), 1994 WL 261997 (June 13, 1994).

*****

ASTi is a private company that specializes in providing high-end communication systems that can be used in sophisticated simulations and training environments of the kind frequently used by military units.  Since its founding in 1989, ASTi has had thousands of successful installations throughout the U.S. military, as well as with private industry, private defense contractors, and with foreign governments and enterprises.

Over the past several years, ASTi has become aware of an effort within a specific division of the United States military to launch a long-term developmental effort to create a system that meets precisely the same needs that ASTi's products already successfully satisfy.  The division is located within the Naval Air Warfare Center Training Systems Division ("TSD"), an organizational unit within the Department of the Navy ("Navy").  Within TSD, there is an engineering lab known as the Concept Development & Integration Lab, located in Orlando, Florida ("the Orlando Lab").  The Orlando Lab uses both employees and independent contractors to develop new products.  Some of the independent contractors and "working groups" with whom the Orlando Lab works are private defense contractors who have a vested interest in promoting long-term developmental contracts, which can be very lucrative for such contractors, and can also justify the ongoing employment of dozens of engineers over many years, at great expense.

2

Over a decade ago, TSD and its Orlando Lab tried to develop a Digital Radio Management System ("DRMS") that failed to meet TSD's need.  It was never able to meet the needs for digital radio communications in simulation and testing environments that have been, and continue to be, successfully met by ASTi's products.  Those ASTi products have been developed over several decades, are sold all over the world, and represent the state-of-the-art for the sophisticated radio communications systems that are needed in advanced simulation and testing environments.

Nevertheless, over the past two years, it has become apparent that TSD and its Orlando Lab (and their associated private contractors) are trying once again to develop from scratch a way to meet the very same technological needs that ASTi's commercial products already successfully meet.  This renewed developmental effort is described as an effort to create the "Next Generation" version of DRMS, or "DRMS-NG."   It has also become apparent that this DRMS-NG effort is being pursued in a manner that will prevent ASTi from ever having a fair shot at competing.

During the early summer of 2023, NAWCSTSD informed ASTi and other industry participants that TSD was considering and anticipating a late summer solicitation and subsequent procurement for DRMS-NG.  The solicitation and procurement did not materialize as anticipated. However, in November 2023, it was revealed that TSD had—in late September 2023—already issued a (non-public) solicitation and made a (non-public) contract award in connection with the DRMS-NG effort.  The contract was awarded to Bowhead Professional and Technical Solutions, LLC ("Bowhead"), and had a total value of approximately $12 million.  According to the information made public in November 2023, TSD had awarded this contract to Bowhead (the "Bowhead Contract") in late September 2023.

Since ASTi believes it can meet all of the needs that DRMS-NG is designed to meet, and can do so on a commercial product basis, it asked TSD for an explanation of the award of the

Bowhead Contract.  After receiving the explanation TSD was willing to provide, ASTi filed this lawsuit.

Shortly after the complaint was filed, counsel for ASTi discussed with counsel for the Government the standard question (as required by the Court) as to whether a preliminary injunction motion would be required.  Counsel for the Government informed counsel for ASTi that while two delivery orders under the contract had been issued, these represented only a very small percentage of the $12 million contract; since ASTi was led to understand that no other work would proceed under the contract, ASTi agreed not to seek a preliminary injunction.  However, during the initial status conference of January 5, 2024, counsel for ASTi made clear to the Court that this decision was based on the understanding from counsel for the Government that the two delivery orders that had been already issued represented a "**very, very small percentage of the contract**." Exhibit F at 11 (emphasis added).  Counsel for the Government did not correct this understanding. *Id.* at 12.

On January 30, 2024, counsel for the Government informed counsel for ASTi that the Government intended to take corrective action by terminating (portions of) the Bowhead Contract for convenience, while leaving some of the Contract in place — *i.e.*, as it related to the two delivery orders already in place.  Counsel for ASTi made clear that ASTi would need to see the underlying contract and delivery orders before deciding on its next steps in this litigation.

Executives for ASTi then scoured the internet and discovered by happenstance a database with details of the Bowhead Contract. The database states that a September 29, 2023, delivery order ("Delivery Order #01") was allocated **$4,036,929.71** of the $12,341,021.38 contract, and that the November 2, 2023, delivery order was allocated $20,882.32. Those figures have since been confirmed by documents that the Government shared with ASTi.

Once ASTi understood that Delivery Order #01 was for over $4 million, and thus over one-third of the full contract value, counsel for ASTi made clear to the Government that ASTi would need to move for a preliminary injunction unless the Government agreed to stay or pause performance of that contract pending some expedited but orderly resolution of this case.  The Government refused to do that.  Accordingly, ASTi was left with no choice but to file this motion for a temporary restraining order and/or preliminary injunction.

For the reasons set forth below, ASTi is entitled to a temporary restraining order and/or preliminary injunction precluding any further performance of the Bowhead Contract, including Delivery Order #01, until such time as this Court can resolve all of ASTi's claims on the merits.

## FACTUAL BACKGROUND

**A.**    **ASTi Is A Private Company That Specializes In Providing Fully Developed Commercial Products To Meet The Needs Of Military Simulated Training Systems.**

The modern military relies on realistic training and simulation systems to prepare its troops for armed conflict. To produce an experience that is realistic, those training systems must feature a "unified voice communications solution," which consists of a panoply of hardware and software products that work together to combine simulated, virtual, and actual radio communications. Plaintiff ASTi is a private corporation that specializes in developing products (both hardware and software) that meet the needs of the military's training systems, including in particular its needs for unified voice communications solutions.  Declaration of James Norton ("Norton Decl.") at ¶¶ 1–8.

ASTi was founded in 1989.  It is organized as a Delaware corporation with its principal place of business in Herndon, Virginia.  ASTi manufactures and fields fully developed commercial hardware and software that can be used to provide a unified voice communications solution that is field-proven for use in military training, experimentation, testing, and evaluation. *Id*. at ¶ 5.

5

ASTi's product-based capabilities can be deployed as individual components or as subsystems to solve specific problems, or as complete ready-for-training systems. *Id.* at ¶ 7. The products are designed to maximize flexibility and scalability without compromising on performance. *Id.* No engineering expertise is necessary for basic setup and operation. *Id.* at ¶ 6.

ASTi has fielded over 11,500 systems at more than 1,000 installation sites in at least 50 countries. *Id.* at ¶ 8. The Voisus line of products is tailored to meet military needs. Voisus products are deployed at numerous Navy and Air Force facilities, *id.*, and on-the-ground users regularly share positive feedback about their experiences with Voisus products, *id.* at ¶ 9.

### B. The Naval Air Warfare Center's TSD Is Engaged In An Effort To Develop A New Digital Radio Management System For Use In Military Simulated Training Systems—"DRMS-NG".

TSD has for many years sought to displace ASTI's products, and to substitute newly developed products created by various working groups of engineers, including from outside defense contractors. TSD operates a Concept Development & Integration Lab, located in Orlando, Florida. The Orlando Lab uses both employee engineers and independent contractors, and has a symbiotic relationship with outside defense contractors who have a vested interest in meeting the military's needs through long-lead-time, developmental contracts, which guarantee thousands of man-hours of engineering work, and are of highly uncertain cost and effectiveness.

Many years ago, TSD and its Orlando Lab launched an effort to design and develop a new Digital Radio Management System, which sought to provide a unified voice communications solution. However, DRMS was not a successful development effort, and failed to produce a product that could compete effectively with ASTi's products. DRMS has failed to keep pace with the capabilities of commercial alternatives, and ASTi has learned from a variety of sources—onsite customers, a fielding contractor, and even Air Force Program Manager Carl White—that the existing DRMS product is unreliable. Declaration of Charles McCullough ("McCullough Decl.")

6

at ¶ 5.

ASTi has also learned over the past two years, however, that TSD intends to develop a next generation version of DRMS—"DRMS-NG." Norton Decl. ¶ 12.  Representatives for ASTi attended a June 2023 Training and Simulation Industry Symposium, where TSD announced a general intent to pursue an IDIQ procurement seeking to acquire the capability to develop, design, products, modify, test, deliver and support DRMS. McCullough Decl. ¶ 8.

Information released since that symposium confirmed that TSD was seeking to develop DRMS-NG for the Naval Air Systems Command ("NAVAIR"), United States Marine Corp, Department of the Air Force ("Air Force"), and other military departments. For example—TSD hosts monthly forums, which it terms "Procurement Administrative Lead Time" ("PALT") updates, to communicate the status of ongoing and upcoming procurements to private industry. *Id.* at ¶ 9. At both the July and September, 2023 PALT meetings, TSD confirmed its June symposium announcement regarding an impending solicitation for DRMS-NG. *Id.*  By the time of the September PALT meeting, ASTi had learned that the procurement timeline had shifted and that a section 8(a) acquisition was still "anticipated," with no particular acquisition schedule, and no particular acquisition strategy ever being "confirmed." *Id.*  The details of the procurement timeline were unclear. *Id.*

    **C.**    **Without Performing The Market Research Required By 10 U.S.C. 3453, And Without Any Public Solicitation Or Public Announcement Of The Award, TSD Awarded A $12 Million Contract To Bowhead To Assist In The Development Of DRMS-NG.**

At the November 2023 PALT meeting, ASTi learned that TSD had awarded Bowhead Professional and Technical Solutions, LLC a contract to develop at least part of the DRMS-NG system. *Id.* at ¶ 11.  In connection with that meeting, ASTi received a spreadsheet from TSD on November 14, 2023, stating that the "Acq Strategy" was "8(a)," that the "Actual RFP" was dated

"17 JUL 2023," and that the "Actual Award" of $12.3 million was made "28 SEP 2023" to "Bowhead." *Id.* The RFP and Award had never, to ASTi's knowledge, been made public. This information therefore came as a surprise, and was inconsistent with ASTi's understanding based on the July and September 2023 PALT meetings.

ASTi made every effort to monitor available sources regarding the potential DRMS-NG solicitation, as ASTi had every intention of either bidding on that solicitation (if it permitted a bid using a developed and proven commercial item), or protesting the solicitation (if it prohibited a bid using a developed and proven commercial item). For example, ASTi monitored public websites like www.SAM.gov and www.FPDS.gov, as well as Navy and Air Force Long Range Acquisition Estimates and Long Range Acquisition Forecasts. ASTi also relied on paid-subscription platforms like GovWin IQ to identify proposed procurements for, among other things, "Live, Virtual, & Constructive" ("LVC") training and simulation systems. McCullough Decl. ¶ 7. ASTi has set up and continually updates search term alerts to ensure that it is kept up to date on procurement developments, and it did so with respect to DRMS-NG. *Id.* But none of that monitoring yielded information about the instant DRMS-NG procurement. Instead, the DRMS-NG contract award was discovered only through the November 2023 PALT meeting.

After ASTi learned of the DRMS-NG contract award to Bowhead, it promptly sought more information from TSD. FAC ¶ 81. While it did not receive the information it requested, it did receive confirmation that a DRMS-NG contract had indeed been awarded to Bowhead. In response, ASTi filed this lawsuit. As explained in Section E of the Factual Background, below, counsel for ASTi was initially assured that only two very small delivery orders had been issued, representing a small portion of the overall contract, so that it could protect its interests without seeking a preliminary injunction. That turned out not to be correct.

In any event, it is evident, and the Government appears to concede, that TSD issued the contract to Bowhead without conducting any of the market research required by 10 U.S.C. § 3453. There was therefore no effort to research the availability of commercial items or nondevelopmental items to meet the needs of the DRMS-NG contract awarded to Bowhead.  Further, as explained above, neither the RFP nor the contract award were made public at the time they were issued.

Documents provided to ASTi during this litigation show that TSD sent a non-public RPF to Bowhead on July 17, 2023, which requested "a proposal for current and future Digital Radio Management System hardware and software components to support the radio management system," as well as "[l]ogistics and engineering support, comprised of spares procurement, technical support, and technical documentation updates[.]" Exhibit E. The RFP states that the DRMS system it seeks to update "consists of the Mini-Remote Interface Controller Console, Mini-RIC Client, Audio "Blue" Boxes, Virtual Tactical Bridge-24, Virtual Tactical Bridge enhanced, Dynamically Employed Virtual communication environment, and other generations of DRMS communication devices." *Id.*

Those same documents confirm that TSD awarded Bowhead an Indefinite Delivery Indefinite Quantity ("IDIQ") contract on September 28, 2023. Exhibit G. The first delivery order related to that contract was executed on September 29, 2023, and another was executed on November 2, 2023. None of this was made public when it happened. There was no public solicitation, no public bidding process, and no public announcement that a contract had been awarded. ASTi only discovered the contract because of a single line in an Excel spreadsheet that was distributed to industry insiders in November 2023, after two delivery orders had already been placed.

**D.    ASTi Has Commercial Products That Meet The Needs Of DRMS-NG And Of The Bowhead Contract.**

The Government recently provided ASTi with a statement of work for DRMS-NG so that ASTi may evaluate the ability of its products to satisfy DRMS-NG requirements. *See* Exhibit B. ASTi evaluated the statement of work and has concluded that it is able to satisfy the requirements of DRMS-NG by providing fully developed commercial hardware and software, subject only to minor modifications of the kinds typically provided in the commercial marketplace. *See* Norton Decl. ¶¶ 13–14.  Further, ASTi has reviewed the statement of work for Delivery Order #01, Exhibit D, and has confirmed that it is able to satisfy the requirements of that delivery order by providing fully developed commercial hardware and software. *See* Norton Decl. ¶¶ 15–17.

**E.    After This Suit Was Filed, TSD Admitted Its Legal Error, But Sought To Continue Its Improper DRMS-NG Developmental Efforts, Including Through Continuing To Perform A $4 Million Portion Of The Bowhead Contract.**

ASTi filed this bid protest to enjoin work from being done on the Bowhead Contract. In the initial discussions between counsel for the parties, counsel for the Government told counsel for ASTi that the two outstanding delivery orders comprised a very small percentage of the underlying contract. FAC ¶ 28. On that basis, ASTi initially agreed to forego seeking preliminary injunctive relief, in exchange for the Government agreeing to stay *any* additional delivery orders being placed.

A few weeks later, counsel for the Government informed counsel for ASTi that the Government intended to "terminate for convenience" the Bowhead Contract, except for the two outstanding delivery orders.  ASTi executives then discovered information on the Federal Procurement Data System database indicating that one of the outstanding delivery orders ("Delivery Order #01") was worth *$4 million*—or one-third of the full contract value. *See* McCullough Decl. ¶¶ 12, n.1.  ASTi immediately contacted counsel for the Government and

arranged a meeting to discuss its intention to seek preliminary relief to enjoin the Bowhead Contract unless the Government were willing to temporarily pause performance of this substantial delivery order. The Government was not willing to do so, necessitating this motion.

### F.   ASTi Will Suffer Irreparable Harm If That Contract Is Not Enjoined.

ASTi will be irreparably harmed by not having the ability to compete for the work being performed pursuant to Delivery Order #01. Norton Decl. ¶¶ 19–24; McCullough Decl. ¶¶ 13–15. ASTi can perform the work called for under Delivery Order #01, and thus its inability to compete for that work costs it at least $4 million in revenue that it has no ability to recover through any legal claim or otherwise.  Norton Decl. ¶¶ 16–20.  Further, the work being performed under Delivery Order #01 will almost certainly not be done in a manner that has interoperability with ASTi products, and thus the performance of the Bowhead Contract threatens to close off any avenue for ASTi to compete to provide its commercial products and services to meet the DRMS-PNG requirements in the future.  *Id*. at ¶¶ 21–24.

Further, over the last twenty years, ASTi has invested millions of dollars in attending defense industry meetings and events, setting up and hosting product demos, drafting and pricing proposals, participating in Department of Defense working groups, contributing to white papers, and educating Department of Defense personnel about the commercial market and their procurement obligations. McCullough Decl. ¶ 13. For a smaller technology company like ASTi, these costs are significant, and the time and resources that go into tracking and attempting to prevent TSD's failed developmental efforts detract from the company's ability to invest in its own product engineering efforts. *Id.*

ASTi first engaged with the Air National Guard and the Air Combat Command in October 2017, when ASTi representatives met interested Air National Guard personnel at their annual

Weapons and Tactics Conference. *Id.* at ¶ 3. ASTi followed up with an onsite meeting and Voisus product demo (with tactical radios provided by the Air National Guard) at the Air National Guard headquarters at Joint Base Andrews, Maryland in January 2018. ASTi understands that TSD intends to develop DRMS-NG under Delivery Order #01 to support the procurement of a Live Missions Operations Network for the Air Combat Command. If DRMS-NG is allowed to be installed at sites under the Air Combat Command, ASTi will be precluded from competing for that future business. Norton Decl. ¶¶ 21–24.  This is but another example of how the Bowhead Contract will render ASTi's long-term investment of time and money a waste—without any explanation to boot.  McCullough Decl. at ¶¶ 7–15.

## LEGAL ARGUMENT

## I.   THIS COURT HAS JURISDICTION TO GRANT ASTI THE RELIEF IT REQUESTS.

"To invoke this Court's bid protest jurisdiction, a protestor must establish both statutory standing and subject matter jurisdiction." *See Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[Plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence."); *see also Starr Int'l Co. v. United States*, 856 F.3d 953, 964 (Fed. Cir. 2017) ("The plaintiff bears the burden of showing standing."). Statutory standing hinges on whether an action falls within the Tucker Act's grant of jurisdiction to this Court. *See* 28 U.S.C. § 1491(b)(1).

### A.   ASTi Has Standing to Pursue This Protest Because Its Voisus Product Line Can Meet the DRMS-NG Requirements, And the Government's Admitted Procurement Error Deprived ASTi of the Opportunity to Compete.

To satisfy 10 U.S.C. § 1491(b)(1)'s standing requirements, "a plaintiff must make two showings." *CliniComp Int'l, Inc. v. United States*, 904 F.3d 1353, 1358 (Fed. Cir. 2018). First, a plaintiff must show that it is an "interested party." *See id.* This standing requirement is statutory,

not jurisdictional. *CACI, Inc.-Fed. v. United State*s, 67 F.4th 1145, 1151 (Fed. Cir. 2023). "An 'interested party' objecting to a contract award is an 'actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract.'" *REV, LLC v. United States, Aptive Res., LLC*, 2024 WL 315925, at *4 (Fed. Cir. Jan. 29, 2024) (quotation omitted). "Second, the plaintiff must show that it was prejudiced by a significant error in the procurement process." *Id. (*quotation omitted). This is also a statutory requirement. *Id.*

ASTi is an "interested party" because it suffered a "non-trivial competitive injury"— namely, that ASTi was deprived of the ability to offer its Voisus product line to meet the DRMS-NG requirements. *See Electra-Med Corp. v. United States*, 140 Fed. Cl. 94, 103 (2018), *aff'd and remanded*, 791 F. App'x 179 (Fed. Cir. 2019) (finding that plaintiff had standing to protest the loss of the opportunity "to sell their products directly to the government"); FAC ¶ 36. ASTi has also shown prejudice, since the Government-conceded procurement error (if unchecked) will result in significant lost sales and revenue. *See* Norton Decl. ¶¶ 19–24 (establishing economic harm in the millions of dollars).

In previous discussions, the Government has disagreed with ASTi regarding the correct standard to apply for determining ASTi's "direct economic interest" in the outcome of the Bowhead Contract. Instead of the "non-trivial competitive injury" standard, the Government has claimed that ASTi must demonstrate a "substantial chance" that it would have won the Bowhead Contract because ASTi's challenge was brought "post-award." First, this debate is academic— ASTi easily satisfies that "substantial chance" standard because ASTi offers commercial and nondevelopmental products that meet the requirements of the DRMS-NG system, Norton Decl. ¶

13, and ASTi has a decades-long track record in winning contracts and deploying Voisus products across all four branches of the military, *id.* at ¶¶ 8–9.

Second, the Government is wrong about the legal standard.  The mere fact that a challenge is brought post-award is of no moment where, as here, the challenged action deprived the protester of the ability to submit a bid.  In that situation, the protester need only demonstrate a "non-trivial competitive injury."  *See Electra-Med.*, 140 Fed. Cl. at 103 (applying the "non-trivial competitive injury" standard to a protester's challenge to a contract modification that deprived it of the opportunity to compete for work).

The Government's contrary assertion ignores the rationale for why courts have applied the "substantial chance" standard in other post-award scenarios.  Specifically, in competitive award situations, the agency has had the opportunity to evaluate competing bids, and so the parties and court have access to the evaluations of the various competitors.  *See, e.g.*, *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1361 (Fed. Cir. 2009) (noting that there is no "factual foundation" for a "substantial chance" prejudice analysis when there have been neither bids nor offers).  Access to competing bids and subsequent evaluations give the parties and court the ability to assess whether correcting the error in question would likely have changed the result.  By contrast, that information is necessarily unavailable when the Government fails to conduct legally required research, compete out the requirements, or even provide public notice of its intent to award the contract.

The Government's "post-award" argument also more generally contradicts the recognition of various courts that application of "interested party" requirements must take into account the specific context in which a protest is brought, and thus that "judicial review of procurement methods should not be thwarted through the wooden application of standing requirements."  *CCL,*

*Inc. v. United States*, 39 Fed. Cl. 780, 790 (1997);  *see also SEKRI, Inc. v. United States*, 34 F.4th 1063, 1071 (Fed. Cir. 2022) (holding that mandatory source had requisite "economic interest" to challenge a procurement that violated a mandatory source statute); *Distributed Sols., Inc. v. United States*, 539 F.3d 1340, 1345 (Fed. Cir. 2008) (holding that contractors had requisite "economic interest" to challenge government action that deprived them of the opportunity to compete); *McAfee, Inc. v. United States*, 111 Fed. Cl. 696, 710 (2013) (holding that software provider had standing to challenge agency's sole-source selection that deprived it of the ability to compete); *Elmendorf Support Servs. Joint Venture v. United States*, 105 Fed. Cl. 203, 209 (2012) (holding that incumbent contractor had standing to challenge an agency's in-sourcing decision).

**B.   This Action Challenges The Award of a Contract, Not the Award of a Delivery Order.**

This Court has jurisdiction over bid protests challenging contract awards, to include IDIQ contracts. *See, e.g.*, *Tele-Consultants, Inc. v. United States*, 142 Fed. Cl. 686, 693 (2019) (resolving bid protest over IDIQ contract awards); *see also Weeks Marine*, 575 F.3d at 1360 (acknowledging that this Court has jurisdiction over bid protest challenging solicitation for IDIQ multiple-award task order contracts). Here, ASTi challenges the DRMS-NG award to Bowhead. FAC ¶¶ 32, 36. This action falls squarely within the Court's bid protest jurisdiction.

At the February 2, 2024, status conference, the Defendant-Intervenor suggested that ASTi's protest could be potentially barred by 10 U.S.C. § 3406(f).  That argument is unsound. Section 3406(f) prohibits protests in this Court "in connection with the issuance or proposed issuance of a task or delivery order."  ASTI's protest is not in connection with the "issuance or proposed issuance of a task or delivery order" for two reasons.

First, ASTi challenges the award of the IDIQ contract, not the delivery orders.  Its challenge is therefore in connection with the issuance of the *contract*, not the issuance of a delivery

order.  Bowhead suggests that ASTi is somehow barred from pursuing the protest because the Government plans to terminate the Bowhead Contract, other than work performed pursuant to the first two delivery orders.  That makes no sense.  Nothing about the Government's action changes the fact that ASTi's challenge is to the award of the *contract*.  Moreover, Bowhead ignores that task and delivery *orders* are issued *under* task or delivery order *contracts*.  *See* 10 U.S.C. § 3401 (defining "delivery order contract" and "task order contract" as a "contract" that "provides for the issuance of orders" for, respectively, the "delivery of property" or "performance of tasks"); 10 U.S.C. § 3406(b) (stating what actions are not required "for issuance of a task or delivery order *under* a task or delivery order contract"); 10 U.S.C. § 3406(c) (defining the requirements for issuing task or delivery orders "issued *under* any" contract awarded when "multiple task or delivery contracts are awarded").  Thus, even entirely ignoring that ASTi is the master of its complaint and that the complaint makes clear that ASTi is challenging the award of the *contract*, it makes no sense to conceive of the delivery order as having an entirely separate and independent existence from the contract under which it was issued.

Second, ASTi also challenges the decision to develop DRMS-NG rather than procuring it as a commercial product or nondevelopmental item.  That decision was antecedent to both the contract award and the delivery orders issued under the contract.  Courts have repeatedly recognized that challenges to such antecedent decisions do not implicate § 3406(f) even where (unlike here) the triggering event for the protest was a task order.  That is because the gravamen of such a challenge is to a decision *separate* from the issuance of a task order.  *See McAfee*, 111 Fed. Cl. at 710 (holding that the challenged task orders did not comprise the "jurisdictional basis" for the protest but were instead the "natural consequences" of the standardization decision that injured the protester); *MORI Assocs., Inc. v. United States*, 102 Fed. Cl. 503, 533 (2011) (holding that

when an agency fails to conduct a "Rule of Two" analysis, a protest in response to the agency's failure is not in connection with the issuance of a task order); *Savantage Fin. Servs., Inc. v. United States*, 81 Fed. Cl. 300, 308 (2008) (holding that the protestor was not challenging a task order solicitation but was instead challenging the agency's decision to select a particular software program as the baseline for a larger initiative without competition).

## II.   ASTI IS ENTITLED TO A PRELIMINARY INJUNCTION.

To grant a TRO or preliminary injunction, this Court should consider the following four factors: (1) the likelihood of Plaintiff's success on the merits of its complaint; (2) whether Plaintiff will suffer irreparable harm if the procurement is not enjoined; (3) whether the balance of hardships tips in Plaintiff's favor; and (4) whether a preliminary injunction will be contrary to the public interest. *See FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993) (preliminary injunction); *OAO Corp. v. United States*, 49 Fed. Cl. 478, 480 (2001) ("When deciding if a TRO is appropriate in a particular case, a court uses the same four-part test applied to motions for a preliminary injunction." (quoting *W & D Ships Deck Works, Inc. v. United States*, 39 Fed. Cl. 638, 647 (1997)). No single factor is dispositive and "the weakness of the showing regarding one factor may be overborne by the strength of the others." *FMC*, 3 F.3d at 427; *ES-KO, Inc. v. United States*, 44 Fed. Cl. 429, 432 (1999).

### A.   ASTi Is Likely To Succeed On The Merits.

Success on the merits requires ASTi to prove that the contract award to Bowhead was arbitrary, capricious, an abuse of the agency's discretion, or otherwise not in accordance with law. *See PGBA, LLC v. United States*, 57 Fed. Cl. 655, 657 (2003) (citing 5 U.S.C. § 706(2)(A); 28 U.S.C. § 1491(b)(4)). Here, success on the merits is likely because the Government has already conceded legal error and agreed to take partial corrective action—*i.e.*, a termination for convenience of part (but not all) of the contract. The Government has provided no justification

for why the conceded legal error should result in only partial corrective action.  Nor is there any such justification.  The Government's failure to conduct the market research into commercial products and nondevelopmental items as required by 10 U.S.C. § 3453 renders the entire contract award contrary to law, as well as arbitrary and capricious.  Thus, this Court is likely to hold that the conceded legal error infects the entire contract award, and that ASTi succeeds on the merits.

Further, the attached declarations show that ASTi would have been able to perform the entire contract that was awarded to Bowhead, including the portion that will remain in effect even after the planned termination for convenience.  Norton Decl. ¶¶ 8–9, 13–18; McCullough Decl. ¶ 6. There is a substantial chance that ASTi would have won the contract award "but for" the legal error.  Thus, ASTi is materially prejudiced by the legal error.

Given the conceded legal error, it should not be necessary for the Court to address all of ASTi's legal challenges to the contract award.  Nevertheless, ASTi notes that in addition to violating 10 U.S.C. § 3453, the Bowhead Contract award was also contrary to law because the use of the SBA Section 8(a) program was unconstitutional, arbitrary, and capricious.  That is particularly true where the facts show that TSD used section 8(a) precisely in order to keep the contract non-public and non-competitive, rather than to advance the ostensible purposes of section 8(a).  Thus, for the reasons set forth more fully in ASTi's complaint, the use of section 8(a) to make the contract award to Bowhead was unconstitutional, contrary to law, arbitrary, and capricious.  FAC ¶¶ 52–64; 92–93; 109–114.

ASTi is prepared to address this and all other merits arguments in more detail should the need arise, but given the Government has conceded legal error, that is not anticipated at this stage of the proceeding.

**B.    ASTi Will Suffer Irreparable Harm if the Procurement Is Not Enjoined.**

ASTi will be irreparably harmed if the contract is not enjoined because it has been prevented from competing for a procurement contract that it could have won. Norton Decl. ¶¶ 13–24. That contract was worth approximately $12 million, and ASTi could have won it and fulfilled all of the needs of the contract by providing its commercial products.  Norton Decl. ¶¶ 13–15. Further, even if one (improperly) considered only the portion of the contract that is still being performed, ASTi could have won that $4 million portion of the contract and fulfilled all of its needs by providing commercial products, and is suffering irreparable harm by being precluded from doing so.  *Id.* at ¶¶ 16–20.

When assessing irreparable injury, "the relevant inquiry . . . is whether plaintiff has an adequate remedy in the absence of an injunction." *Magellan Corp. v. United States*, 27 Fed. Cl. 446, 447 (1993).  An entity that is wrongfully precluded from bidding on a government contract has no way to recover damages for that wrongful exclusion.  Thus, it is well established that losing the opportunity to compete for a government contract constitutes irreparable harm.  "Such a lost opportunity to compete has been found sufficient to constitute irreparable harm." *Int'l Res. Recovery, Inc. v. United States*, 60 Fed. Cl. 1, 8 (2004) (citing *United Payors and United Providers Health Servs., Inc. v. United States*, 55 Fed. Cl. 323, 333 (2003)).

In addition, ASTi is likely to suffer additional, compounded irreparable harm because Bowhead's performance of the contract will likely result in systems being acquired that are deliberately made to be incompatible with ASTi's products, undermining ASTi's ability to compete on future procurements to meet the needs of DRMS-NG.  Norton Decl. ¶¶ 21–25; McCullough ¶¶ 14–15. The contract that TSD awarded to Bowhead will allow Bowhead to provide TSD with hardware components that can only support DRMS software products. ASTi will therefore likely be locked out of future TSD procurements due to engineered incompatibility. That

harm will grow exponentially as new DRMS components proliferate across the military.

### C. The Balance of Hardships Weighs In ASTi's Favor.

The Court must "balance the harm to plaintiff if the preliminary injunction were not issued and 'the harm to the government and to the intervening defendant' if the preliminary injunction were issued." *Harmonia Holdings Grp., LLC v. United States*, 166 Fed. Cl. 727, 741 (2023) (citation omitted). As shown above, the harm to ASTi is enormous, and includes not only loss of the ability to compete for a contract worth at least $4 million, but also the loss of the ability to compete for additional contracts worth tens of millions more.  Norton Decl. ¶¶ 16–24.  Further, ASTi has suffered the irreparable harm of losing millions of dollars it has invested in pursuing, tracking, and seeking to fulfill the DRMS-NG needs identified by TSD.  McCullough Decl. ¶¶ 13–15.

Potential harm to the Government and to Bowhead cannot outweigh the harm faced by ASTi.  They may argue they would be prejudiced by delayed performance of the contract.  But this Court has held that "mere delay of a contract is insufficient, standing alone, to avoid preliminary relief." *GEO Grp., Inc. v. United States*, 100 Fed. Cl. 223, 229 (2011). "[O]nly in an exceptional case would such delay alone warrant a denial of injunctive relief, or the courts would never grant injunctive relief in bid protests." *Reilly's Wholesale Produce v. United States*, 73 Fed. Cl. 705, 716 (2016) (citation omitted). And "[t]his is not such an 'exceptional case,' particularly as it appears that some of the problems encountered here are, at least in part, of defendant's own making[.]" *PGBA*, 57 Fed. Cl. at 663.

The Government and Bowhead might also argue that delay would cause an increase in administrative costs or burdens, but such harm should not be considered where it stems from the agency's "own failure" to properly consider commercial options. *See Sys. Stud. & Simulation, Inc. v. United States*, 146 Fed. Cl. 186, 204 (2019).  And to the extent Defendants argue that Bowhead

is a small business that cannot withstand the delay, the Court should be aware that Bowhead is owned by a multi-billion company that has substantially greater resources than ASTi.  FAC ¶¶ 18, 93.

Moreover, the Court should recognize that any claimed harm to the Government is outweighed by the benefits the Government will enjoy if and when ASTi demonstrates that it can meet the Government's procurement on a commercial product basis—and therefore more efficiently and effectively than could be achieved through an uncertain, expensive, and wasteful developmental project.  *See generally Palantir USG, Inc. v. United States*, 129 Fed. Cl. 218, 294–95 (2016), aff'd, 904 F.3d 980 (Fed. Cir. 2018) (holding that as directed by 10 U.S.C. 3453, "and as is intuitively obvious, it is in the public interest to investigate whether commercial items exist that can satisfy the government's needs, in whole or in part, so as to avoid investing time and taxpayer money into developing a product that already exists").

Every day that the work at issue in this dispute continues is another day that harm to the Government grows—even if TSD and its attorneys fail to recognize it. Congress recognized this sort of potential harm when it enacted an unambiguous requirement that the military prioritize the procurement of commercial products. Enjoining further work related to the Bowhead contract will not only prevent further harm to ASTi due to its exclusion from competition—but it will prevent further harm to the Government due to its failure to follow the commercial item requirements Congress enacted.

**D.    Awarding A Preliminary Injunction Would Be In The Public Interest.**

"[T]he public interest in honest, open, and fair competition in the procurement process is compromised whenever an agency abuses its discretion in evaluating a contractor's bid." *Software Testing Sols., Inc. v. United States*, 58 Fed. Cl. 533, 538 (2003). And it "is best served by requiring the government to comply with federal procurement law—law that was intended to promote

competition." *Sys. Stud.*, 146 Fed. Cl. at 204. Enjoining all work related to the Bowhead Contract will halt harm to the public interest caused by the Government failing to comply with 10 U.S.C. § 3453 and otherwise acting unlawfully, arbitrarily, and capriciously—in particular through its failure to perform the requisite market research into the availability of commercial products that can meet its needs, to procure those commercial options to the maximum extent practicable, and to allow for a competitive bidding process.  By allowing these required steps to occur, an injunction will further the public interest in maximizing competitive bidding, the use of fully developed commercial items, and the most efficient and effective methods for meeting procurement needs. Both the military "and the public at large, also have a long-term interest in ensuring that the new contract represents the best overall value to the government." *PGBA*, 57 Fed. Cl. at 663.

## CONCLUSION

ASTi respectfully requests that this Court grant its motion for temporary restraining order or preliminary injunction, and order the following relief:

a) A temporary restraining order or preliminary injunction preserving the status quo, and enjoining any further performance of the Bowhead contract including any further acquisition of goods and services pending a final decision on the merits; and

b) Such other relief as the Court may deem just and appropriate or to which ASTi is otherwise entitled.

Respectfully Submitted,

By: /s/ Hamish P.M. Hume
Hamish P.M. Hume (Attorney of Record)
Samuel C. Kaplan
Gina A. Rossman
BOIES SCHILLER FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
(202) 237-2727 (t)
(202) 237-6131 (f)
hhume@bsfllp.com
skaplan@bsfllp.com
grossman@bsfllp.com

Dated: February 6, 2024

*Counsel for Plaintiff Advanced Simulation Technology, Inc.*

23