# In the United States Court of Federal Claims

ADVANCED SIMULATION
TECHNOLOGY, INC.,

*Plaintiff,*

v.

THE UNITED STATES,

*Defendant*

and

BOWHEAD PROFESSIONAL AND
TECHNICAL SOLUTIONS LLC,

*Defendant-Intervenor.*

No. 23-2201C
(Filed: March 5, 2024)

**ORDER**

Advanced Simulation Technology, Inc. (ASTi) filed this bid protest over a contract that was awarded to Bowhead Professional and Technical Solutions LLC. The parties initially agreed that the government would stay performance of the contract, other than two delivery orders that had already issued, and ASTi would not seek a preliminary injunction. A month later, after ASTi learned further details about the size of those two delivery orders, ASTi moved for a preliminary injunction. ECF No. 22. The government responded both by opposing the injunction and moving to dismiss ASTi's complaint. ECF No. 26. The intervenor, Bowhead, also opposed the preliminary injunction. ECF No. 25. I conducted a hearing on these motions on February 21, 2024.

I denied the government's motion to dismiss and gave my reasons on the record at the February 21 hearing. ECF No. 33 at 152-58.

At the hearing I also explained that ASTi was entitled to the preliminary injunctive relief it requested, which covered two line items within one of the outstanding delivery orders. ECF No. 33 at 167-173. The precise terms of the injunction I planned to issue would have been complicated because some of the products covered in those two line items had already been delivered to the Navy, some were at Bowhead's warehouse awaiting delivery to the Navy, and some had been ordered by Bowhead but had not yet arrived at Bowhead's warehouse. *Id.* at 147-48. And some of those products were also in the process of moving. *Id.*; *see id.* at 175. I therefore explained that I

intended "to order the Government and Intervenor, Bowhead, to temporarily stop any efforts to fulfill Line Items 1 and 2 of Delivery Order Number N6134023023F0451, Delivery Order 1, issued under the September 29th, 2023 indefinite delivery/indefinite quantity contract" in a week. ECF No. 33 at 172. I asked the parties to provide me a draft order by February 28 addressing precisely what conduct would be enjoined, and I planned to issue the injunction soon after that. *Id.* at 174-75 (asking for a joint status report by February 28 stating "the terms of [a] preliminary injunction, including precisely what conduct is enjoined and precisely when it will end … or the government can voluntarily stay performance by then"); *id.* at 181. On February 28, I granted the parties a one-day extension of time (ECF No. 34), and the parties then submitted their joint status report (ECF No. 37). In that report, the government explained that on February 27, 2024, it terminated the two outstanding delivery orders in full. ECF No. 37 at 1.

But the parties are still unhappy. The issue now, as the government puts it, is "whether product that is ready to ship to [the Navy] and is simply sitting in Bowhead's warehouse can be sent to [the Navy] pursuant to the Termination Notice and FAR Part 49." ECF No. 37 at 6. The government argues that it can accept delivery of those products and that the termination of the two delivery orders beyond those deliveries moots ASTi's request for a preliminary injunction. The government adds that this aspect of the case is now only a matter of contract administration—administering a termination agreement. According to the government, that termination agreement is governed by Federal Acquisition Regulation (FAR) 49.104 and is outside the jurisdiction of this court. ECF No. 37 at 3.

ASTi argues that allowing delivery of items in Bowhead's warehouse "allows the Government to secure partial performance of an illegally awarded contract" (ECF No. 37 at 10) and requests that the court enjoin the government from taking "delivery of any goods related to the VTBe and RIC consoles [covered by line items 1 and 2 of Delivery Order 1], whether in Bowhead's warehouse or not, and … instruct Bowhead not to take deliveries of any further such goods" (ECF No 37 at 12). ASTi states that, because "any ongoing authority to perform work or deliver goods under the so-called termination settlement derives from the contract itself," this court still has jurisdiction over the administration of the contract and can issue the injunction ASTi requests. ECF No. 37 at 9-10.

I find that the government's termination of the outstanding delivery orders ended the contract over which this court had jurisdiction. As I explained in the February 21 hearing, the IDIQ contract still existed at that point for the purposes of the two outstanding delivery orders, and ASTi could challenge it at that time. The IDIQ contract had not been canceled retroactively. ECF No. 33 at 153. At this point, though, the delivery orders have also been canceled, so circumstances have changed.

FAR 49.104(e) states that, when a government contract is canceled, a contractor "shall comply with the notice and termination clause of the contract … [which] generally require that the contractor … [t]ake necessary or directed action to protect and preserve property in the contractor's possession in which the Government has or may acquire an interest and, as directed by the [contracting officer], deliver the property to the Government." Some of the goods ordered under the delivery orders are in Bowhead's possession because they are in Bowhead's warehouse, they

have been ready to deliver for some time, and they "would only have to be put on a truck and delivered." ECF No. 37 at 6.

At the February 21 hearing, I stated that the point of a preliminary injunction is to preserve the status quo. ECF No. 33 at 172. The status quo at that point was that the product that had already been delivered to the Navy would stay there and would not be returned to the vendor. Indeed, ASTi did not request an injunction that would have required the government to return products it had already received. That would have upended, not preserved, the status quo.

I also explained that, while laches does not provide a basis for dismissing ASTI's complaint, there still could be consequences for ASTi's delay in bringing the complaint and delay in requesting a preliminary injunction. ECF No. 33 at 168; *see Software Testing Sols., Inc. v. United States*, 58 Fed. Cl. 533, 535-36, 538 (2003). While line drawing when there is a continuous stream of deliveries happening, and the products are in different places at a given moment, is difficult, the most logical line here is between products in Bowhead's possession that are ready to be delivered and those not yet in Bowhead's possession. *See generally Dubinsky v. United States*, 44 Fed. Cl. 509, 512 (1999). Any injunction prohibiting deliveries from Bowhead to the Navy does not preserve the status quo but instead would require Bowhead to return items already in its warehouse that are there because of the government's order, at a cost to Bowhead that would be passed along to the government. *See JCN Construction, Inc. v. United States*, 107 Fed. Cl. 503, 518 (2012) (explaining that work that was nearly completed supported denying an injunction).

As the government points out, the cancellation of the two delivery orders means that ASTi's February 6 request for a preliminary injunction enjoining performance of those delivery orders is moot. ECF No. 37 at 1-2. "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (citation omitted). An issue is moot "[w]hen, during the course of litigation, it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue." *Chapman Law Firm Co. v. Greenleaf Constr. Co.*, 490 F.3d 934, 939 (Fed. Cir. 2007). "[I]f an event occurs while a case is pending ... that makes it impossible for the court to grant any effectual relief whatever ..., the [case] must be dismissed." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992). The IDIQ contract to Bowhead—and the delivery orders issued under that IDIQ contract—have all been terminated. This court can no longer stop performance of already-canceled contracts. *See, e.g., Mitchco International, Inc. v. United States*, 26 F.4th 1373, 1378 (Fed. Cir. 2022) ("There is no question that the injunctive relief [appellant] seeks is moot insofar as [appellant] seeks an order enjoining [a successful awardee's] performance of the contract, since the Army has already terminated [the successful awardee's] contract").

And requiring the Navy to refuse to accept products that Bowhead holds and is ready to deliver goes beyond the court's bid-protest jurisdiction. ASTi requests that this court enjoin the government from taking any deliveries of goods relate to VTBe and RIC consoles, whether or not they are already in Bowhead's warehouse. ECF No. 37 at 12. The injunction that ASTi proposes in the joint status report (ECF No. 37) would affect how the government proceeds after a contract has been terminated. This court does not have jurisdiction over those matters. "This court has consistently held that matters of contract administration—including matters of contract performance—fall beyond the Court's bid protest jurisdiction." *Huffman Building P, LLC v.*

*United States*, 152 Fed. Cl. 476, 485 (2021) (quotations omitted); *see also Coast Pro., Inc. v. United States,* 828 F.3d 1349, 1355 (Fed. Cir. 2016) ("If a contractor wishes to contest an agency's decision regarding exercising an option under the contract, such a challenge is a matter of contract administration governed by the CDA."); *Gull Airborne Instruments, Inc. v. Weinberger*, 694 F.2d 838, 841-43 (D.C. Cir. 1982) (holding that the disappointed bidder "has standing to contest the award of the contract but not its administration" because the regulations governing contract termination are "not designed to foster competition or to protect unsuccessful bidders from illegal injury to their economic interests"). That is true even when the government has terminated a contract for convenience and the issue is the terms of the termination. *Davis/HRGM Joint Venture v. United States*, 50 Fed. Cl. 539, 544 (2001) (holding that a "challenge to [a] termination for convenience does not fall within the express language of § 1491(b) because it does not relate to an interested party's objection to a solicitation, a proposed award, or an award").

The procedure in FAR 49.104(e) that the government is now following post-termination—memorialized in the termination notice between the government and Bowhead—is not an action covered by 28 U.S.C. § 1491(b)(1), governing bid protests. Because this is a bid protest case, and because the government's actions have mooted ASTi's request for a preliminary injunction, I will deny ASTi's request for a preliminary injunction.

I therefore will not enjoin the actions that I understand the government has outlined it will take. I understand that the government will accept delivery of goods that were part of line items 1 and 2 of Delivery Order 1 only if they were in the Bowhead warehouse as of February 27. *See, e.g.,* ECF No. 37 at 4 ("Any property not in the possession of Bowhead would not be subject to delivery to the United States."); *id.* at 5 n.1 ("The United States asserts that it will not seek delivery of [products where shipment from outside vendors was in progress] to it pursuant to the Termination Notice or FAR 49.104(e) if Bowhead receives those products after February 27, 2024."). In other words, goods that were in Bowhead's warehouse before February 27, which the government has already obligated itself to pay for, the government may accept.

No components of the VTBe are currently at a Bowhead warehouse. ECF No. 36-2 at 2 (Table 5 (line labeled VTBe where "on-hand (either at Bowhead or Customer)" is empty and the comments state that there is an "extended lead time to 5/2")). Most of the RIC console components are already in the Bowhead warehouse. *Id.* (Table 5); ECF No. 36-1 at 3 (explaining which additional items were received). It is unclear if the ASUS PN64 mini computer barebones, a part of the RIC console, was at the Bowhead warehouse as of February 27. ECF No. 36-1 at 4 (listing the mini computer as one of the items that had been received prior to the receipt of the Notice of Termination, but also describing the mini computer as "in transit to BPTS and expected by March 6"). Items such as the mini computers must have been in Bowhead's possession, i.e. the Bowhead warehouse, as of February 27 to be subject to delivery in the termination settlement process.

For the reasons outlined above and at the February 21 hearing, I **deny** the government's motion to dismiss (ECF No. 26). I also **deny** ASTi's motion for a preliminary injunction (ECF No. 22) as moot.

The parties are **ordered** to provide a joint status report with a proposed briefing schedule on any outstanding issues by March 12, 2024.

**IT IS SO ORDERED.**

 s/ Molly R. Silfen

MOLLY R. SILFEN

Judge