# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ADVANCED SIMULATION TECHNOLOGY INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | No. 23-2201C |
| v. | ) | (Judge Silfen) |
| | ) | |
| THE UNITED STATES, | ) ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION TO DISMISS

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. MCCARTHY
Director

DOUGLAS K. MICKLE
Assistant Director

OF COUNSEL:

PATRICK D. HEALY
Counsel
Naval Air Warfare Center
Training Systems Division

BRENDAN D. JORDAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
PO Box 480
Ben Franklin Station
Washington, D.C. 20530
Telephone: (202) 616-0342
Email:  Brendan.d.jordan@usdoj.gov

April 9, 2024

Attorneys for Defendant

# **TABLE OF CONTENTS**

ISSUES PRESENTED ........................................................................................... 2

STATEMENT OF FACTS ................................................................................... 2

    I.     Procedural History ....................................................................... 2

    II.    ASTi's Amended Complaint ........................................................ 3

ARGUMENT ....................................................................................................... 5

    I.     Legal Standard .............................................................................. 5

        A.  Standard For A Motion To Dismiss For Lack Of Subject Matter Jurisdiction .. 5

        B.  Standard For A Motion To Dismiss For Failure To State A Claim ................... 6

    II.    This Court Does Not Possess Jurisdiction To Enjoin NAWCTSD's Development Of DRMS ................................................................................................. 7

        A.  NAWCTSD Is A DoD Laboratory Authorized To Conduct Research And Development Of Technology Products ............................................. 8

        B.  NAWCTSD's Decision To Research And Develop DRMS Is Not A Procurement Decision That This Court Possesses Jurisdiction To Enjoin ...... 10

        C.  This Court Does Not Possess Jurisdiction To Issue Declaratory Relief .......... 14

    III.   ASTi Fails To State A Claim Over Which This Court Possesses Jurisdiction .............. 16

        A.  ASTi's Allegations Regarding Outside Contractors Fail To Plausibly Allege A Claim ............................................................................ 16

        B.  ASTi's Allegations Regarding 'Obscure Contracting Vehicles' Fail To Plausibly Allege A Claim For Relief ............................................ 18

CONCLUSION .................................................................................................... 19

## **TABLE OF AUTHORITIES**

**Cases**                                                                 **Page(s)**

*Acceptance Ins. Co. v. United States*,
   583 F.3d 849 (Fed. Cir. 2009) ............................................................................7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................................7

*Axiom Res. Mgmt., Inc. v. United States*,
   564 F.3d 1374 (Fed. Cir. 2009) .........................................................................15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................7, 18

*Bradley v. Chiron Corp.*,
   136 F.3d 1317 (Fed. Cir. 1998) ..........................................................................7

*Cleveland Assets, LLC v. United States*,
   883 F.3d 1378 (Fed. Cir. 2018) ................................................................6, 10, 14

*Creation Upgrades, Inc. v. United States*,
   417 F. App'x 957 (Fed. Cir. 2011) ...............................................................11, 18

*Dellew Corp. v. United States*,
   855 F.3d 1375 (Fed. Cir. 2017) ..........................................................................4

*Distributed Sols., Inc. v. United States*,
   539 F.3d 1340 (Fed. Cir. 2008) ................................................................6, 10, 14

*Frankel v. United States*,
   842 F.3d 1246 (Fed. Cir. 2016) .........................................................................12

*Hymas v. United States*,
   810 F.3d 1312 (Fed. Cir. 2016) ....................................................................10, 12

*Int'l Genomics Consortium v. United States*,
   104 Fed. Cl. 669 (2012) ...............................................................................14, 19

*Kanemoto v. Reno*,
   41 F.3d 641 (Fed. Cir. 1994) ............................................................................10

*L-3 Commc'ns Integrated Sys., L.P. v. United States*,
   79 Fed. Cl. 453 (2007) .....................................................................................17

*Lewis v. United States,*
    70 F.3d 597 (Fed. Cir. 1995) ................................................................... 17, 18

*Lindsay v. United States,*
    295 F.3d 1252 (Fed. Cir. 2002) ........................................................................ 7

*Norton v. S. Utah Wilderness Alliance,*
    542 U.S. 55 (2004) ........................................................................................... 15

*Perry v. United States,*
    149 Fed. Cl. 1 (2020) ....................................................................................... 18

*R & D Dynamics Corp. v. United States,*
    80 Fed. Cl. 715 (2007), *aff'd,* 309 F. App'x 388 (Fed. Cir. 2009) ........................... 12

*Resource Conservation Group, LLC v. United States,*
    597 F.3d 1238 (2010) .......................................................... 10, 11, 15, 18

*Reynolds v. Army & Air Force Exch. Serv.,*
    846 F.2d 746 (Fed. Cir. 1988) ................................................................. 6, 13

*Rowe v. United States,*
    151 Fed. Cl. 268 (2020) ...................................................................................... 7

*Shell Oil Co. v. United States,*
    148 Fed. Cl. 781 (2020) ...................................................................................... 7

*Space Expl. Techs. Corp. v. United States,*
    144 Fed. Cl. 433 (2019) ....................................................................... 12, 13, 18

*Unison Software, Inc. v. United States,*
    168 Fed. Cl. 160 (2023) ...............................................................................*passim*

*United Pac. Ins. Co. v. United States,*
    464 F.3d 1325 (Fed. Cir. 2006) ......................................................................... 7

*United States v. Mitchell,*
    445 U.S. 535 (1980) ........................................................................................... 6

*VFA, Inc. v. United States,*
    118 Fed. Cl. 735 (2014) ..................................................................... 13, 14, 15

**Statutes**

10 U.S.C. § 2194 ................................................................................................. 8, 17

10 U.S.C. § 2195 ................................................................................................ 8

10 U.S.C. § 2358 ................................................................................................ 8

10 U.S.C. § 2371 ................................................................................................ 8

10 U.S.C. § 2501 ................................................................................................ 8

10 U.S.C. § 2506 ................................................................................................ 8

10 U.S.C. § 2514 ................................................................................................ 8

10 U.S.C. § 2515 ................................................................................................ 8

10 U.S.C. § 3453 ....................................................................................... 4, 9, 15

10 U.S.C. § 4001 ................................................................................. 8, 9, 12, 17

10 U.S.C. § 4021 ............................................................................... 8, 12, 17, 18

10 U.S.C. § 4811 ................................................................................................ 8

10 U.S.C. § 4832 ......................................................................................... 8, 17

10 U.S.C. § 5022 ................................................................................................ 8

10 U.S.C. § 8022 ................................................................................................ 8

15 U.S.C. § 3702 ................................................................................................ 8

15 U.S.C. § 3703 ................................................................................................ 8

15 U.S.C. § 3705 ................................................................................................ 8

15 U.S.C. § 3706 ................................................................................................ 8

15 U.S.C. § 3710 ......................................................................................... 8, 9

15 U.S.C. § 3710a ............................................................................................... 8

15 U.S.C. § 3710c ............................................................................................... 8

15 U.S.C. § 3712 ................................................................................................ 8

15 U.S.C. § 3715 ................................................................................................ 8

28 U.S.C. § 1491(b) ........................................................................................*passim*

28 U.S.C. § 2501 ........................................................................................17

41 U.S.C. § 111 ........................................................................................10

41 U.S.C. § 403 ........................................................................................10

**Rules**

RCFC 12(b) ........................................................................................*passim*

**Regulations**

2 C.F.R. § 180.970 ........................................................................................12

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ADVANCED SIMULATION<br>TECHNOLOGY INC., | )<br>)<br>) | |
| Plaintiff, | )<br>) | |
| | ) | No. 23-2201c |
| v. | ) | (Judge Silfen) |
| | ) | |
| UNITED STATES, | )<br>) | |
| Defendant. | )<br>) | |
| | ) | |

## <u>DEFENDANT'S MOTION TO DISMISS</u>

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully submits this motion to dismiss the first amended complaint, ECF No. 21 (Am. Compl.), of plaintiff, Advanced Simulation Technology, Inc. (ASTi), for lack of subject matter jurisdiction and failure to state a claim. ASTi alleges that the development of a radio system by a defense laboratory is a procurement action that this Court should enjoin. However, the Naval Air Warfare Center Training Systems Division (NAWCTSD) is engaging in statutorily authorized research and development and not a procurement action that falls under this Court's bid protest jurisdiction. The only procurement challenge ASTi makes in its amended complaint is ASTi's challenge to the award of an IDIQ contract to Bowhead Professional and Technical Solutions, LLC (Bowhead). Because ASTi's challenge to the Bowhead award has already been dismissed, this Court does not possess jurisdiction to decide what remains of ASTi's amended complaint, namely, ASTi's request to enjoin and declare unlawful the research and development activities of a defense lab. Accordingly, we respectfully request that the Court dismiss ASTi's

complaint.  In support of this motion, we rely upon the amended complaint and the following brief.

## ISSUES PRESENTED

1. Whether this Court possesses jurisdiction to enjoin the statutorily authorized research and development activities of a defense laboratory based on a bid protest that makes no challenge in connection with a procurement?

2. Whether this Court possesses jurisdiction to issue declaratory relief holding that the United States violated the law and should procure commercial products from vendors such as ASTi?

3. Whether ASTi has adequately stated a claim for relief over which this Court possesses jurisdiction?

## STATEMENT OF FACTS

### I.      Procedural History

ASTi filed this protest on December 29, 2023.  On January 5, 2023, during the initial status conference, counsel for the United States notified the Court, ASTi, and Bowhead that NAWCTSD was considering taking corrective action with respect to the Bowhead contract. ECF No. 22-8.  Although NAWCTSD engaged in market research prior to awarding the IDIQ contract to Bowhead, NAWCTSD did not sufficiently document commerciality determinations with respect to the products it intended to acquire through the Bowhead contract.  On February 2, 2024, counsel for the United States informed the Court and the parties that NAWCTSD would take corrective action by terminating the IDIQ contract for convenience.  However, ASTi was not satisfied that the termination of the IDIQ contract was sufficient to moot the case.

2

On February 6, 2024, ASTi filed an amended complaint and a motion to preliminarily enjoin future performance of the two delivery orders that had been previously issued to Bowhead under the now-terminated IDIQ contract, ECF No. 22.  At a February 21, 2024 hearing on ASTi's preliminary injunction motion, this Court indicated that it was inclined to preliminarily enjoin at least certain portions of one delivery order and ordered the parties to submit a joint status report setting forth their positions on precisely what conduct should be enjoined.  On February 27, 2024, NAWCTSD terminated both of the previously issued delivery orders.  On February 29, 2024, the parties submitted a joint status report where they set forth their respective positions on whether ASTi's motion for a preliminary injunction was moot following the terminations.  *See* ECF No. 37.  On March 5, 2024, this Court denied ASTi's motion for a preliminary injunction as moot and ordered the parties to submit a joint status report with a proposed briefing schedule on any outstanding issues by March 12, 2024.  *See* ECF No 40.

On March 12, 2024, the parties, submitted a joint status report where they jointly stipulated to the dismissal of ASTi's challenge to the Bowhead contract.  *See* ECF No. 44.  In this status report ASTi and the United States both agreed to proceed to motion to dismiss briefing on any claims for relief made in amended complaint other than ASTi's challenge to Bowhead contract.  *Id*.  On March 14, 2024, the Court dismissed ASTi's challenge to the Bowhead contract and entered a motion to dismiss briefing schedule.  *See* ECF No. 45.

This motion followed.

II.   **ASTi's Amended Complaint**

The focus of ASTi's amended complaint is its challenge to NAWCTSD's decision to award Bowhead a contract, which provided NAWCTSD authority to issue delivery orders for

3

fulfillment by Bowhead.  ASTi alleged that in making such an award NAWCTSD violated 10 U.S.C. § 3453 and the Fifth Amendment to the Constitution and therefore sought to enjoin continued performance of that contract.  *See*, *e.g.*, Am. Compl. ¶¶1, 29.  On March 14, 2024, this Court dismissed ASTi's challenge to the Bowhead contract.  ECF No. 45.

What remains of ASTi's amended complaint following its dismissal of the Bowhead challenge is a request for this Court to issue a declaratory judgment that NAWCTSD "violated 10 U.S.C. § 3453" by failing to conduct market research and "procure[] commercial or nondevelopmental items, such as ASTi's Voisus line of products," Am. Compl. Prayer for Relief ¶1, and ASTi's request to permanently enjoin NAWCTSD from violating 10 U.S.C. § 3453, and other laws, "by enjoining [NAWCTSD] from further development of DRMS-NG," Amend. Compl. Prayer for Relief ¶5.[1]

ASTi alleges that NAWCTSD has bypassed procuring commercial items, such as those ASTi offers "through a hybrid process of developmental efforts."  Am. Compl. ¶6.  ASTi alleges that as part of this developmental process, NAWCTSD's Orlando lab "works to develop technologies," including, among other products, "the Digital Radio Management System (DRMS)."  Am. Compl. ¶¶7-8.  ASTi alleges that the DRMS system produced by NAWCTSD "directly competes with" ASTi products, including its Voisus line of products, which ASTi describes as its offerings that are the "most directly comparable to DRMS."  Am. Compl. ¶10.

---

[1]  ASTi also seeks attorney fees, Am. Compl. Prayer for Relief ¶6, but under 28 U.S.C. § 1491(b)(2) the only monetary relief ASTi can recover in a bid protest are "bid preparation and proposal costs."  ASTi cannot recover bid preparation and proposal costs because its entire protest is premised on the fact that it did not submit a proposal or bid.  Further, ASTi is not entitled to EAJA fees.  *See, e.g., Dellew Corp. v. United States*, 855 F.3d 1375, 1379 (Fed. Cir. 2017) (a protester is not entitled to EAJA fees where it fails to demonstrate, among other requirements, that it is a "prevailing party").

4

ASTi alleges that NAWCTSD's development initiatives as a whole are "misadventure[s]" and that NAWCTSD should "harness the power of the commercial market" instead of engaging in the research and development of products. Am. Compl. ¶13. ASTi alleges that the defendant in its protest is the "United States, acting through NAWCTSD." Am. Compl. ¶32.

Although ASTi alleges that NAWCTSD's development activities, including DRMS, are a failure, ASTi asserts that it is "not challeng[ing] the decision to develop the original DRMS." Am. Compl. ¶12n.1. ASTi asserts that it is challenging "the decision to launch a developmental effort to develop a new DRMS – Next Generation, or DRMS-NG." *Id.* ASTi describes the alleged DRMS-NG effort as a "doubl[ing] down on" DRMS. *Id.*

Although ASTi alleges that DRMS is one of the "various technologies that have been developed internally" by NAWCTSD, ASTi also alleges that NAWCTSD has on occasions sought to procure goods and services from outside firms, such as Bowhead, to assist in the development effort of DRMS. Am. Compl. ¶¶20-21, 27. ASTi alleges that this Court not only possesses jurisdiction over "procurements for the DRMS-NG system" such as the award to Bowhead, but also "the ongoing DRMS-NG developmental effort because that effort constitutes a violation of law 'in connection with a procurement or proposed procurement.'" Am. Compl. ¶37. Other than the Bowhead award, ASTi's amended complaint identifies no other acquisition NAWCTSD has made or proposes to make with respect to the DRMS "developmental effort."

## ARGUMENT

## I.   Legal Standard

### A.   Standard For A Motion To Dismiss For Lack Of Subject Matter Jurisdiction

Pursuant to RCFC 12(b)(l), the Court must dismiss a claim where subject matter jurisdiction is lacking. The plaintiff bears the burden of establishing the Court's jurisdiction by a

preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) (citations omitted). This Court's bid protest jurisdiction is established and limited by the Tucker Act. *See* 28 U.S.C. § 1491(b). The Tucker Act provides that this Court "shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." *Id.* at § 1491(b)(1). The Tucker Act further provides that the Court in exercising its bid protest jurisdiction "shall give due regard to the interests of national defense and national security" and may award relief "the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs." *Id.* at § 1491(b)(2)-(3). This Court's bid protest jurisdiction under 28 U.S.C. § 1491(b) is available only within the procurement context and therefore "extend[s] only to actions in which 'the government at least initiated a procurement, or initiated 'the process for determining a need' for acquisition.'" *Cleveland Assets, LLC v. United States*, 883 F.3d 1378, 1381 (Fed. Cir. 2018) (quoting *Distributed Sols., Inc. v. United States*, 539 F.3d 1340, 1346 (Fed. Cir. 2008)).

Because the Tucker Act is a waiver of sovereign immunity, it must be strictly construed. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). Therefore, allegations of statutory or regulatory violations that are only "tangentially related to a government procurement" are insufficient for this Court to possess jurisdiction over a bid protest. *Cleveland Assets*, 883 F.3d at 1381.

## B. **Standard For A Motion To Dismiss For Failure To State A Claim**

"It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) 'when the facts asserted by the claimant do not entitle him to a legal remedy.'" *Rowe v. United States*, 151 Fed. Cl. 268, 271 (2020) (quoting *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002)).  In reviewing a motion to dismiss for failure to state a claim, the Court "must assume all well-pled factual allegations are true and indulge in all reasonable inferences in favor of the nonmovant." *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327–28 (Fed. Cir. 2006) (citation omitted).  However, "a complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." *Acceptance Ins. Co. v. United States*, 583 F.3d 849, 853 (Fed. Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). In other words, the facts as alleged "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Moreover, "conclusory statements of law and fact 'are not entitled to the assumption of truth' and 'must be supported by factual allegations.'" *Shell Oil Co. v. United States*, 148 Fed. Cl. 781, 788 (2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  Accordingly, "naked assertions devoid of further factual enhancement are insufficient to state a claim." *Id*. (internal quotation marks omitted)(cleaned up); *see also Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed. Cir. 1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim.").

## II.    This Court Does Not Possess Jurisdiction To Enjoin NAWCTSD's Development Of DRMS

After the dismissal of the challenge to the contract awarded to Bowhead, all that remains of ASTi's protest is a challenge to the NAWCTSD's continued internal development of DRMS. However, a challenge to a defense laboratory's ability to perform statutorily authorized research

and development internal to its organization is not a challenge over which this Court possesses

bid protest jurisdiction.  Therefore, ASTi's protest must be dismissed in its entirety.

### A.  NAWCTSD Is A DoD Laboratory Authorized To Conduct Research And Development Of Technology Products

NAWCTSD was designated as a Department of the Defense (DoD) laboratory pursuant

to a January 26, 2010 designation from the Office of Naval Research.  *See* Attch. #1.

NAWCTSD requested designation as a "laboratory" for the purposes of 10 U.S.C. §§ 2194,

2195, 2358, 2371, 2501, 2506, 2514, 2515, 5022[2] and 15 U.S.C. §§ 3702, 3703, 3705, 3706,

3710, 3710a, 3710c, 3712, 3715.  *Id*.  Defense laboratories, such as NAWCTSD, conduct

research and development activities, which contribute to the robustness and diversity of the

United States' national technology and industrial base.  *See* 10 U.S.C. §§ 4001, 4832.  Having a

diverse and robust development infrastructure, which includes both defense laboratories and

private industry, helps provide the United States' armed forces with systems capable of ensuring

technological superiority over potential adversaries and helps ensure preparedness before the

commencement of a war, national emergency, or mobilization.  *See* 10 U.S.C. § 4811.

As a designated DoD laboratory, NAWCTSD has the authority to "engage in basic

research, applied research, advanced research, and development projects that – (1) are necessary

to the responsibilities of such Secretary's department in the field of research and development;

and (2) either — (A) relate to weapon systems and other military needs; or (B) are of potential

---

[2]  These statutory cites are to provisions of Title 10 as they existed at the time of the January 2010 laboratory designation.  Title 10 of the U.S. Code was reorganized in January 2022, resulting in many of these provisions currently being found at other sections of the U.S. Code. Section 2358 was recodified as 10 U.S.C. § 4001. Section 2371 was recodified as 10 U.S.C. § 4021. Section 2501 was recodified as 10 U.S.C. § 4811. Section 2514 was recodified as 10 U.S.C. § 4832. Section 5022 was recodified as 10 U.S.C. § 8022.  Sections 2506 and 2515 of Title 10 have been repealed since January 2010.

8

interest to the Department of Defense." *See* 10 U.S.C. § 4001. Such research and development may be accomplished through military departments themselves, "employees and consultants" of the DoD, contracts, cooperative agreements, grants, or other transaction authorities (OTAs). *Id*. Based on the authority provided by 10 U.S.C. § 4001 and other provisions of Titles 10 and 15, NAWCTSD, as a DoD laboratory, may conduct research and development of military training technologies such as DRMS.

ASTi argues that 10 U.S.C. § 3453 prohibits NAWCTSD from developing military training products and that NAWCTSD must procure commercial training products sold by private vendors, such as ASTi. *See* Am. Compl. ¶¶21, 24. This argument based on section 3453 is in tension with other provisions of title 10, such as section 4001, which makes clear that defense laboratories have the authority to research and *develop* technology products, and provisions of Title 15, such as section 3710, which states that it "is the continuing responsibility of the Federal Government to ensure the full use of the results of the Nation's Federal investment in research and development," 15 U.S.C. § 3710(a)(1). NAWCTSD's authority to "engage in . . . development projects" is only constrained by the requirements that a development project be "necessary to the responsibilities of [NAWCTSD]" and that the project is either related to "military needs" or is "of potential interest to the Department of Defense." 10 U.S.C. § 4001(a). Section 3453 does not constrain the ability of a DoD laboratory to do research or development or place any limits on what a laboratory can research or develop. Section 3453's requirement, including the market research requirement, only applies "with respect to a procurement of supplies or services." 10 U.S.C. § 3453(a)(1). Section 3453 cannot constrain the *development* of

DRMS by NAWCTSD because NAWCTSD developing a product, such as DRMS, is not a procurement, or any kind of acquisition for that matter.

**B. NAWCTSD's Decision To Research And Develop DRMS Is Not A Procurement Decision That This Court Possesses Jurisdiction To Enjoin**

The injunctive power of this Court only extends to bid protests of *procurements*. *Cleveland Assets*, 883 F.3d at 1381; *see also Resource Conservation Group, LLC v. United States*, 597 F.3d 1238, 1245 (Fed. Cir. 2010) ("relief under 1491(b)(1) is unavailable outside the procurement context."); *Kanemoto v. Reno*, 41 F.3d 641, 644–45 (Fed. Cir. 1994) ("The remedies available in [the Court of Federal Claims] extend only to those affording monetary relief; the court cannot entertain claims for injunctive relief or specific performance, except in narrowly defined, statutorily provided circumstances . . ."). Because NAWCTSD's research and development of DRMS is not a *procurement*, this Court does not possess jurisdiction to enjoin NAWCTSD's research and development of DRMS. *See also Hymas v. United States*, 810 F.3d 1312, 1328 (Fed. Cir. 2016) (the Claims Court's bid protest jurisdiction under 28 U.S.C. § 1491(b)(1) speaks 'exclusively' to 'procurement solicitations and contracts.'") (internal citations omitted).

Because the Tucker Act itself does not define the term "procurement," this Court and the Federal Circuit have looked to the definition Congress provided in 41 U.S.C. § 111[3], which defines a procurement as, "all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout." *See Distributed Sols.*, 539 F.3d at 1345 (quoting 41 U.S.C. § 111) (emphasis in original omitted). The Federal Circuit has also looked to dictionary definitions to

---

[3] 41 U.S.C. § 111 was formerly cited as 41 U.S.C. § 403.

10

determine the outer bounds of what kinds of Government actions are "procurements."  In *Resource Conservation Group, LLC v. United States*, the Federal Circuit looked to Black's Law Dictionary, which defined a "procurement contract" as "a government contract with a manufacturer or supplier of goods or machinery or services under the terms of which a sale or service is made to the government," 597 F.3d at 1243 (quoting Black's Law Dictionary 1208 (6th ed. 1990))(internal quotation marks omitted), and Webster's Dictionary, which defined "procure" as "'to get possession of; obtain, acquire,'" *id.* (quoting Webster's Third New International Dictionary 1809 (1993)).  The *Resource Conservation Group* court also emphasized that the gravamen of what makes a Government action a procurement is whether the Government is or is attempting to *acquire* goods or services.  *Id.*; *see also Creation Upgrades, Inc. v. United States*, 417 F. App'x 957, 959 (Fed. Cir. 2011) (stating that "procurement" encompasses the process of *acquiring* property or services and does not encompass the *sale* of Government property).

Here, the research and development of DRMS is not an acquisition and thus not a procurement.  DRMS is a digital radio training platform that NAWCTSD initially created many years ago and has been the subject of further development in the ensuing years.  Indeed, ASTi's complaint assails NAWCTSD's development or production of DRMS, but not the *acquisition* of products apart those that were the subject of the Bowhead contract.  *See*, *e.g.*, Am. Compl. ¶21. After the dismissal of the Bowhead challenge, there is no solicitation, contract award, acquisition, or needs determination for ASTi to challenge with respect to NAWCTSD's activities associated with DRMS.

However, even if NAWCTSD's research and development of DRMS is deemed an acquisition, which it is not, that fact does not mean that NAWCTSD researching and developing DRMS is a procurement.  Not all Government acquisitions, broadly understood, are procurements.  For example, cooperative agreements are not procurements even though the Government obtains the services of a third party by entering into these arrangements.  *See Hymas*, 810 F.3d at 1328 (holding that cooperative agreements were not procurement contracts because the "the agency did not intend to acquire [the services it provided funding to] for the direct benefit or use of the United States Government.") (internal quotation marks omitted). Similarly, research and development awards made by the Government to third parties are not "procurements" where the awards are "developmental in nature" and are not seeking to acquire "goods and services."  *See R & D Dynamics Corp. v. United States*, 80 Fed. Cl. 715, 722 (2007), *aff'd,* 309 F. App'x 388 (Fed. Cir. 2009).  Nor are awards for "other transactions" made pursuant to OTAs, such as 10 U.S.C. § 4021, procurement contracts that fall under this Court's bid protest jurisdiction.  *See Space Expl. Techs. Corp. v. United States*, 144 Fed. Cl. 433, 442 (2019); *see also Frankel v. United States*, 842 F.3d 1246, 1251 (Fed. Cir. 2016) (contract arising from winning a prize competition is not a procurement); 2 C.F.R. § 180.970 (providing a non-exhaustive list of examples of "Nonprocurement transactions").

NAWCTSD's research and development authority explicitly permits the acquisition of research and development services through non-procurement means such as grants, cooperative agreements, and other transactions.  *See* 10 U.S.C. §§ 4001, 4021.  Because research and development can be acquired through a separate statutory authority besides "procurement" authority, ASTi fails to meet its jurisdictional burden that research and development of DRMS is

made through "procurement" even if it somehow establishes that research and development is

somehow an acquisition.  *See Reynolds*, 846 F.2d at 748 (Plaintiff "bears the burden of

establishing subject matter jurisdiction by a preponderance of the evidence").

Further, the mere existence of a relationship between the Bowhead contract and DRMS is

insufficient to confer this Court with bid protest jurisdiction over the entire and continued

development of DRMS.  *See Space Expl. Techs.*, 144 Fed. Cl. at 443 ("not every decision *related*

to a procurement is 'in connection with a procurement or proposed procurement' as

contemplated by the Tucker Act."); *Unison Software, Inc. v. United States*, 168 Fed. Cl. 160, 163

(2023) ("[G]overnment actions . . . so remote from any particular procurement . . . do not

constitute procurements or proposed procurements . . .").  If NAWCTSD embarks on a new

procurement effort following the termination of the Bowhead contract, it is possible that this

Court may have jurisdiction over such a protest.  However, no such protest is currently before

this Court.

ASTi also argues that the "developmental effort" involving DRMS was in furtherance of

NAWCTSD trying to meet its "needs" and thus, a procurement.  *See*, *e.g.*, Am. Compl. ¶¶ 33, 37.

However, not every agency action or decision regarding its "needs" is a protestable

"procurement" decision.  *See*, *e.g.*, *VFA, Inc. v. United States*, 118 Fed. Cl. 735, 743 (2014).  The

Federal Circuit in *Distributed Solutions* interpreted the phrase "in connection with a

procurement" as it appears in 1491(b) as referring to a challenge to any stage of "the process of

acquiring property or services, beginning with the process for determining a need for property or

services and ending with contract completion and closeout."  539 F.3d at 1345 (emphasis in

original omitted).  In other words, for a bid protest to be challenge to a needs determination, the

13

decision under review must have at least a more than tangential nexus with an actual or proposed acquisition. *See Cleveland Assets*, 883 F.3d at 1381; *see also Unison Software*, 168 Fed. Cl. at 169 (the definition of procurement is "broad," but not "limitless.").

It would open the floodgates to all sorts of alleged violations of law that have nothing to do with an actual or proposed acquisition if any decision that has any bearing on what an agency "needs" could implicate this Court's bid protest jurisdiction. As this Court observed in *International Genomics Consortium v. United States,* such an expansive reading of *Distributed Solutions*, "would unlock a veritable Pandora's box of bid protest challenges to many internal agency decisions . . . that heretofore have been viewed as off-limits to judicial review." 104 Fed. Cl. 669, 676 (2012). The *International Genomics Consortium* Court further observed that "[a] careful reading of [*Distributed Solutions*] reveals that the court repeatedly relied upon the fact that the agency had begun a formal contracting process by issuing an RFI[,] . . . [which] suggest[s] that it was the issuance of the RFI to outside contractors . . . and not the preceding internal agency discussions, which truly marked the beginning of the process to determine the agency's needs" in *Distributed Solutions*. *Id.* at 677; *see also VFA*, 118 Fed. Cl. at 740 (2014) (holding that "[w]hile many courts have cited *Distributed Solutions* for the proposition that Tucker Act bid protest jurisdiction is broad, the holding remains limited by the facts of the case."). Similarly, the decision to perform research and development of DRMS is not a protestable needs determination. Because there was no RFI or other step towards a procurement apart from the Bowhead contract, there is nothing further in ASTi's complaint over which this Court possess jurisdiction.

### C. This Court Does Not Possess Jurisdiction To Issue Declaratory Relief

In addition to ASTi's request to enjoin the development of DRMS, this Court also does not possess jurisdiction to issue a declaratory judgment that NAWCTSD "violated 10 U.S.C. § 3453" by failing to "procure[] commercial or nondevelopmental items, such as ASTi's Voisus line of products," Am. Compl. Prayer for Relief ¶1.  Because there is no procurement, there is no jurisdiction for this Court to award declaratory relief.  *Res. Conservation Grp.*, 597 F.3d at 1245–46.  Similarly, an order declaring that that the Government should "follow the law, which the government is already obligated to do, would not redress any injury" and therefore cannot be had.  *See Unison Software*, 168 Fed. Cl. at 171.  Further, this Court does not possess jurisdiction to declare that NAWCTSD should or should not buy certain products.  *See VFA*, 118 Fed. Cl. at 743 (rejecting a "theory of jurisdiction [proposed by plaintiff that] every time the government chooses *not to* procure a good or service from a private contractor, and instead creates or develops something on its own, the providers of similar products and services would be able to challenge this decision, asking 'why don't you buy from us instead?').  ASTi's request for declaratory relief regarding what products the United States should or should not purchase also unduly infringes upon the Executive function and gives rise to separation of powers concerns.  The "Supreme Court has warned against undue judicial interference with the lawful discretion given to agencies."  *See Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1384 (Fed. Cir. 2009) (citing *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 67 (2004)).  If the Court grants the declaratory relief ASTi requests, the Court would effectively be stepping into the role of the Executive Branch and dictating what products that United States should or should not purchase.

Because this Court does not possess jurisdiction over what remains of ASTi's complaint after the dismissal of the challenge to the contract awarded to Bowhead, this Court should dismiss ASTi's entire complaint.

III.    **ASTi Fails To State A Claim Over Which This Court Possesses Jurisdiction**

Because the development of DRMS is not a procurement and ASTi's amended complaint fails to challenge any procurement other than the Bowhead contract, this Court does not possess jurisdiction over ASTi's amended complaint. Consequently, ASTi's amended complaint also fails to state a claim for relief. *See Unison Software*, 168 Fed. Cl. at 168 ("The fact that they are not procurements or proposed procurements deprives this court of subject-matter jurisdiction; without any viable relief, those claims must also be dismissed under Rule 12(b)(6).").

Nevertheless, even if this Court concludes that it possesses subject matter jurisdiction over what remains of ASTi's amended complaint following the dismissal of the Bowhead challenge, ASTi's amended complaint should still be dismissed for failure to state a claim because it does not plausibly allege a challenge to a procurement action. Throughout its amended complaint, ASTi makes passing references to "outside contractors" and "obscure contracting vehicles." *See*, *e.g.*, Am. Compl. ¶¶ 8, 9, 23, 28, 30. These general allegations regarding contractors and contracting vehicles lack specificity, are insufficient to state a claim for relief, and warrant dismissal.

A.    **ASTi's Allegations Regarding Outside Contractors Fail To Plausibly Allege A Claim**

ASTi's amended complaint does not contain any allegations regarding the existence of any procurement contract used to obtain "outside contractors" nor does it contain any allegations regarding legal errors associated with a specific procurement to obtain "outside contractors." Individuals from academia and industry can work with employees of a defense laboratory on a

variety of tasks without needing a "procurement contract" in place for that relationship to exist. *See, e.g.*, 10 U.S.C. §§ 2194, 4001, 4021, 4832.  Thus, the mere allegation of NAWCTSD working with outside contractors does not imply the existence of a procurement contract.  And even if it did, ASTi provides no specific allegations regarding a *procurement* arrangement between NAWCTSD and "outside contractors."

ASTi also fails to allege any specific dates regarding the alleged retention of "outside contractors."  DRMS has been in development since the 1990s and the statute of limitations for a Tucker Act claim is six years.  28 U.S.C. § 2501; *see also  L-3 Commc'ns Integrated Sys., L.P. v. United States*, 79 Fed. Cl. 453, 460–61 (2007) (applying the six-year statute of limitations to bid protest claims).  ASTi's complaint contains no allegations plausibly suggesting that a procurement decision with respect to "outside contractors" was made since December 29, 2017, six years prior to the filing of this lawsuit.

ASTi's complaint also does not allege that NAWCTSD retained outside contractors through a procurement process, that such contractors were retained specifically to work on research and development activities associated with DRMS, or that ASTi was interested in supplying its own employees to serve as contractors to work on DRMS alongside NAWCTSD personnel.  Based on the sparse facts ASTi has alleged regarding "outside contractors," it would be impossible for the United States to assemble an administrative record documenting a decision making process regarding a procurement to retain "outside contractors," assuming the allegations are true.  Also, mere references to "outside contractors" without plausible allegations suggesting a right to relief cannot serve as putative jurisdictional hooks for the Court to consider what remains of ASTi's protest following the Bowhead dismissal.  *See Lewis v. United States*, 70 F.3d

17

597, 603 (Fed. Cir. 1995); *Perry v. United States*, 149 Fed. Cl. 1, 17 (2020) (A plaintiff "cannot

invoke this Court's jurisdiction to adjudicate [its] grievances merely by invoking Tucker Act

language, such as 'contract.'").

Accordingly, ASTi's various references to "outside contractors" throughout its complaint

are insufficient to state a claim for relief.

## B.  ASTi's Allegations Regarding 'Obscure Contracting Vehicles' Fail To Plausibly Allege A Claim For Relief

ASTi's allegations regarding "obscure contracting vehicles" that NAWCTSD allegedly

used to propagate DRMS are also insufficient to state a claim challenging a procurement.  As

discussed above, a procurement concerns the acquisition process, not the process of leasing or

selling government property.  *See Res. Conservation Grp.*,  597 F.3d at 1244 (a solicitation for

the lease of government property was not a "procurement" under § 1491(b)(1) because the

government was not acquiring property or services.); *Creation Upgrades*, 417 F. App'x at 959

(the sale of government property is not a procurement).  A challenge to the "propagation" of

DRMS is at base not a challenge to an acquisition.  ASTi also fails to allege any details

suggesting that the "obscure contracting vehicles" are procurement contracts as opposed to

"other transactions" or non-procurement transactions, which are not protestable under 1491(b).

*See Space Expl. Techs*, 144 Fed. Cl. at 442; 10 U.S.C. § 4021.  ASTi provides no details on the

dates of any such arrangements, whether ASTi was an interested party, or any other relevant

details regarding "obscure contracting vehicles."

Although the pleading standard for stating a claim for relief  is liberal, it is not toothless

as a plaintiff must allege a plausible claim for relief with sufficient factual particularity.  *See*

*Twombly*, 550 U.S. at 557.  The Court should not excuse ASTi's pleading failures and allow this

18

lawsuit to proceed so that ASTi can "go on a fishing expedition to uncover" information

regarding "obscure contracting vehicles." *Unison Software*, 168 Fed. Cl. at 170; *Int'l Genomics

Consortium*, 104 Fed. Cl. at 677.  If ASTi wishes to learn more regarding other contracting

vehicles, it can make Freedom of Information Act (FOIA) requests of NAWCTSD and engage in

other fact finding.  Indeed, on March 19, 2024, ASTi filed a FOIA request seeking information

on NAWCTSD's market research efforts and interagency agreements.  *See* Attch. #2.  Therefore,

this Court's dismissal of ASTi's lawsuit will not result in any undue unfairness to ASTi.

## <u>CONCLUSION</u>

For the foregoing reasons, we respectfully request that the Court grant the defendant's

motion and dismiss plaintiff's amended complaint.


Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ Douglas K. Mickle
DOUGLAS K. MICKLE
OF COUNSEL:                                Assistant Director

PATRICK D. HEALY                           /s/ Brendan D. Jordan
Counsel                                    BRENDAN JORDAN
Naval Air Warfare Center                   Trial Attorney
Training Systems Division                  Department of Justice
                                           Civil Division
                                           Commercial Litigation Branch
                                           P.O. Box 480
                                           Ben Franklin Station
                                           Washington, DC 20530
                                           Telephone: (202) 616-0342

19

Email: brendan.d.jordan@usdoj.gov

April 9, 2024                             Attorneys for Defendant